1
2
3
4
5              **IN THE UNITED STATES DISTRICT COURT**
6                **FOR THE DISTRICT OF ARIZONA**
7

8   Jamonz Ross,                          No. CV 13-01845 PHX JAT (MEA)

9                    Petitioner,           **REPORT AND**
                                           **RECOMMENDATION**
10  v.

11  Charles L. Ryan, Arizona Attorney General,

12                   Respondents.

13

14  **TO THE HONORABLE JAMES A. TEILBORG:**

15          Petitioner, who is pro se in this matter, docketed a motion seeking a writ of habeas

16  corpus pursuant to 28 U.S.C. § 2254 on September 6, 2013. Petitioner lodged a motion

17  for leave to proceed in this matter *in forma pauperis* on September 27, 2013. See Doc. 4.

18  In on order entered January 7, 2014, see Doc. 12, the Court granted Petitioner leave to

19  proceed *in forma pauperis* and ordered the petition dismissed with leave to amend.

20  Petitioner docketed a first amended petition on January 15, 2014. See Doc. 15.

21  Respondents docketed a limited answer to the amended petition for habeas corpus relief

22  on October 10, 2014. See Doc. 41 ("Answer"). On October 24, 2014, Petitioner

23  docketed a reply to the answer to the petition. See Doc. 43.

24      **I Procedural background**

25      The following facts were found by the Arizona Court of Appeals:

26      [Petitioner] was pulled over for a traffic violation on December 23, 2009.
        The officer noticed a pill bottle sticking out of [Petitioner's] pocket, and
27      noticed that the name "Ross" was not on the bottle. The officer suspected
        the pills were Alprazolam, a controlled substance, but did not charge
28

[Petitioner] until the substance contained in the pills could be verified by the lab. The officer impounded the pills and sent them to a crime lab. A forensic scientist testified that in fact, the pills were Alprazolam.[1]

[At his trial in July of 2011, Petitioner] (who was representing himself) testified that the pills belonged to someone named Lisa and that she had left them at his house earlier that week. However, he admitted on cross-examination that he did not know Lisa's last name, although he had known her for 10 years. He also admitted he had three prior felony convictions between 1999 and 2005. He was found guilty on both charges.

On September 25, 2010, a police officer was notified by a detective that [Petitioner] might be in the area and that there was a warrant for his arrest [for the crimes charged in CR 2010–007952]. After [Petitioner] was arrested and transported to county jail, "several items of drugs" consisting of pills, methamphetamine and marijuana were found on his person. He was booked under the original warrant because the drugs [seized on September 25, 2010,] had not yet been officially tested and identified, so he was released. However, a forensic scientist for the Phoenix Police Department testified [at Petitioner's trial] that her analysis of items submitted for testing were the controlled substances alleged in the indictment.

On October 30, 2010, [Petitioner] was arrested based on the September 25, 2010 charges. When he was searched, another two baggies of methamphetamine and marijuana were found.

Doc. 41 (Answer), Exh. CC at 3-4.

Petitioner was indicted for the September 25, 2010, and October 30, 2010 offenses in CR 2010–158088 in the Maricopa County Superior Court on November 10, 2010, with two counts of possession or use of dangerous drugs, class 4 felonies (Counts 1 & 4); two counts of possession or use of marijuana, class 6 felonies (Counts 2 & 5); and one count of possession or use of narcotic drugs, a class 4 felony (Count 3). (Exhibit B.)

Id. at 3.

On November 9, 2010, at the time of his indictment in CR 2010–007952, Petitioner filed a written waiver of counsel, indicating he wished to exercise his right to represent himself at his criminal proceedings; Petitioner was appointed advisory counsel.

---

[1] For the December 23, 2009 offenses, Petitioner was indicted in CR 2010–007952 in the Maricopa County Superior Court with one count of possession of dangerous drugs, a class 4 felony (Count 1); and possession of drug paraphernalia, a class 6 felony (Count 2). Answer, Exh. D.

See id., Exh. A.  On November 10, 2010, the grand jury indictment was returned in CR 2010-158088.  Id., Exh. B.  On January 25, 2011, Petitioner signed a waiver of counsel in the second case.  Exh. F.

A "final" pretrial conference in these two cases, plus an additional pending criminal matter, was set for April 4, 2011.  Petitioner's advisory counsel was present at the pretrial conference.  At that time Petitioner presented the court and the prosecutor with a motion to dismiss the indictments.  The court found, with regard to Petitioner's "jurisdictional plea" asserting the charges must be dismissed because he had not been properly arraigned, that arraignments had occurred in all pending criminal matters.  Petitioner averred to the court that, although an investigator was to be appointed to him by an order issued in January of 2011, he had not spoken with or seen an investigator.  Although authorization for an investigator had occurred in January, advisory counsel told the court they were unaware of an investigator being appointed.

The court noted a witness list had been provided.  At that time, trial was set for the first matter for April 11, 2011.  The trial court set a final trial management conference in the first case for April 6 and set a date for trial for April 11, noting that these dates might be delayed by the appointment of the investigator.

Petitioner's trial in the first matter began on or about July 27, 2011.  Exh. JJ.  On that date the trial court explained to Petitioner that the court could conduct an evidentiary hearing on Petitioner's motion to suppress evidence in one of the other pending cases, which would require "excluding" time regarding the trials, which had been ordered to be held sequentially with different juries.  Petitioner chose to go to trial at that time on the first case.

Petitioner represented himself at his first trial and testified on his own behalf at his first trial.  Petitioner's primary argument at his first trial was that he did not know the pills he possessed were Alprazolam or that possession of the pills was illegal and, accordingly, that he did not "knowingly" possess the drugs.  Petitioner also argued that the investigating officer never made any attempt to verify that the pills did belong to Lisa and that Lisa lawfully possessed the pills.  The investigating officer testified that

Petitioner had not provided information regarding Lisa and that testing revealed the Alprazolam in the pill bottle was not the same medication as listed on the bottle as being prescribed for Lisa.  The prosecutor noted to the jury that Petitioner had not exercised his right to subpoena witnesses to subpoena Lisa to substantiate his explanation of the events.  The jury in the first trial deliberated for about an hour before returning a guilty verdict.

> Petitioner was tried separately in each matter, and in both instances, waived his right to counsel. (Exhibits A & F.) Midtrial, Petitioner filed a special action in the Arizona Court of Appeals, arguing the trial court erred in denying his motion to dismiss, which asserted seven claims for relief, including: (1) a supervening indictment was not a proper probable cause determination; (2) the indictment insufficiently stated the facts and informed Petitioner of the charges he was facing; (3) Petitioner was not arraigned; and (4) the court lacked jurisdiction. (Exhibit G.) The Arizona Court of Appeals summarily dismissed the petition. (Exhibit H.)
>
> Petitioner filed a petition for review in the Arizona Supreme Court from the dismissal of his special action, setting forth the same arguments. (Exhibit I.) The Arizona Supreme Court denied the petition for review on September 27, 2011. (Exhibit P.)
>
> In CR 2010–007952, the jury found Petitioner guilty of both counts of possession on July 28, 2011. (Exhibits L.) Almost a month later, Petitioner petitioned for special action in both cause numbers in the Arizona Court of Appeals. (Exhibit M.) In the petition, Petitioner argued that he had been denied the "right to a preliminary hearing and/or probable cause determination," and the right to challenge jurisdiction. (Id.) The Arizona Court of Appeals declined jurisdiction. (Exhibit N.) In CR 2010–158088, the jury found Petitioner guilty of all five counts of possession on November 9, 2011. (Exhibit R.)[2]
>
> On December 16, 2011, the trial court sentenced Petitioner to presumptive sentences in CR 2010–007952, to be served concurrently to each other and concurrently with the sentences in CR 2010–158088. (Exhibit T.) The trial court credited Petitioner with 378 days of presentence incarceration. (Id.) That same day, in CR 2010–158088, the trial court sentenced Petitioner, with two prior felony convictions, to presumptive sentences, to be served

---

[2]  Petitioner's second trial, on the charges of possession of methamphetamine and marijuana, began on November 9, 2011. Petitioner represented himself at this trial and did not testify on his own behalf at this trial.  After deliberating for less than an hour the jury found Petitioner guilty on all counts charged.  After the conclusion of the second trial the state decided not to proceed with the charges asserted in Petitioner's third case and those charges were dismissed.

- 4 -

1   concurrently to each other and concurrently with the sentences in CR 2010–
2   007952. (Exhibit S.) The trial court credited Petitioner with 411 days of
    presentence incarceration. (Id.) In both cases, Petitioner's sentences totaled
3   10 years. (Exhibits S& T.)

4   Answer at 2-4 (internal quotations omitted).

5       Petitioner took a timely appeal of his convictions and sentences in both cases and

6   consolidated his two trials for purposes of the appeal.  Id., Exh. U. Petitioner's appointed

7   appellate counsel filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), and

8   Arizona v. Leon, 104 Ariz. 297, 451 P.2d 878 (1969), informing the court that they could

9   find no meritorious issue to raise, and asking the state appellate court to search the record

10  for fundamental error.  Id., Exh. Z.

11      In his pro per supplemental brief, Petitioner asserted that:

12      (1) his due process and equal protection rights were violated because the
13      indictments were insufficient as a matter of law to put him on notice of the
        charges; (2) he was never arraigned thus depriving the court of jurisdiction,
14      a "not-guilty" arraignment is unconstitutional, and the failure to arraign him
15      in accordance with Arizona Rule of Criminal Procedure (Rule) 14.3
        amounted to a denial of due process; (3) after moving to dismiss his case
16      for Rule 8 speedy trial violations, he was forced to go to trial without
        adequate time to prepare; and (4) his defense was hindered by the county
17      jail's policy of not allowing inmates to call witnesses or investigators
18      directly, making him unable to call witnesses or investigators at trial.
        (Exhibit AA.)
19

20  Id. at 5.

21      The Arizona Court of Appeals affirmed Petitioner's convictions and sentences in a

22  memorandum decision issued April 2, 2013.   Id., Exh. CC.   The appellate court

23  concluded that Petitioner had failed to explain specifically how any of the charges were

24  insufficient and also found that the indictments included descriptions sufficient to inform

25  Petitioner of the charged offenses.   The appellate court also found Petitioner was

26  arraigned in both cases and that he was represented by counsel at each of these hearings.

27  With regard to Petitioner's claim that he had insufficient time to prepare for trial, the

28  appellate court summarily found that the trial court had twice offered to give Petitioner

- 5 -

more time to prepare for trial and that Petitioner had declined both opportunities to do so. The Arizona Court of Appeals also found Petitioner failed to explain how access to a telephone would have affected his defense claims or why he did not seek assistance from advisory counsel. The appellate court determined there were no meritorious grounds for reversal of Petitioner's conviction or for modification of the imposed sentences. Id., Exh. CC.

> On April 5, 2013, Petitioner moved for reconsideration, requested an evidentiary hearing, and moved to supplement the record with the not-guilty arraignment transcripts. (Exhibits DD & EE.) In his motion for reconsideration, Petitioner stated that the court failed to address "the federal claim portion" of his indictment and arraignment issues. (Exhibit DD.) Petitioner then reiterated his arguments, and countered the court's findings that he had failed to explain portions of his claims. (Id.) Finally, Petitioner argued that he had a federal constitutional right to call witnesses and introduce evidence on his behalf, and this right and his due process rights were violated when he could not call witnesses or the investigator. (Id.) The Arizona Court of Appeals denied Petitioner's motions. (Exhibit FF.)

Id. at 5-6. Petitioner sought reconsideration, which motion was denied.

Petitioner sought review of the Court of Appeals' decision by the Arizona Supreme Court. Id., Exh. GG. Petitioner asserted the same four issues raised in his supplemental pro per brief to the Court of Appeals, and reiterated and expanded upon the issues raised in his motion for reconsideration. Id., Exh. GG. Petitioner also filed a supplement to his petition for review, expanding upon the arguments regarding his arraignment. Id., Exh. HH. On October 8, 2013, the Arizona Supreme Court denied the petition for review. Id., Exh. II. Petitioner did not seek certiorari and the Arizona Court of Appeals issued the mandate in his direct appeal on November 7, 2013. Id., Exh. JJ.

On July 9, 2012, while his direct appeal was pending, Petitioner filed a petition for writ of habeas corpus in the Arizona Supreme Court. Id., Exh. W. Petitioner argued that, because he was never arraigned, the trial court lacked jurisdiction to proceed against him. Id., Exh. W. Petitioner asserted that, at the "12.10 not-guilty hearing," he was not informed of the nature and cause of the accusations against him, that he was not read the

charges, that he was not allowed to submit his own plea, and that he was not represented by counsel, all in violation of his rights pursuant to the "due process, equal protection, and fair process clauses." Id., Exh W.   The Arizona Supreme Court dismissed the petition for writ of habeas corpus on September 25, 2012, finding that the issues raised had already been denied.  The Arizona Supreme Court also concluded that Petitioner had been arraigned, that Petitioner was represented by counsel at each arraignment, and that Petitioner had entered a plea of not guilty as to all charges. Id., Exh. X.

Petitioner moved for reconsideration and requested an evidentiary hearing. Id., Exh. Y. In this motion Petitioner argued that the state court minute entries were "lying" and that his affidavit and the recordings of the proceedings would prove his claims. Id., Exh. Y. The motion was denied on January 18, 2013.  Id., Exh. BB.

In his federal habeas action Petitioner asserts he is entitled to relief because:

(1) Petitioner's due process and equal protection rights were violated when he did not receive a proper arraignment;
(2) Petitioner's due process rights were violated because the indictments were insufficient to notify Petitioner of the charges against him;
(3) Petitioner's due process and fair trial rights were violated because he was unable to place telephone calls to witnesses or an investigator before trial;
(4) Petitioner's due process and fair trial rights were violated when, after he refused to waive his right to a speedy trial, the trial judge set trial to begin two hours after a status conference; and
(5) Petitioner's due process, fair trial, and equal protection rights were violated when he was denied arraignment transcripts.

Id. at 7.

Respondents allow Petitioner's first, second, and fifth claims for relief were exhausted in the state courts.  Respondents argue that Petitioner's third and fourth claims for federal habeas relief were not properly exhausted in the state courts and that Petitioner has not shown cause nor prejudice with regard to his procedural default of these claims.

Petitioner did not raise and exhaust his Ground III and IV claims as federal claims in the state court. In his direct appeal and corresponding petition for review, Petitioner argued that he was forced to go to trial without adequate

time to prepare and that his defense was hindered by the county jail's policy of not allowing inmates to call witnesses or investigators directly. (Exhibits AA & GG.) In each instance, Petitioner failed to cite any authority. (Id.) He did not assert, as he does now, that his federal constitutional due process and fair trial rights were violated. (Id.; see also Docket #1.) "If a habeas petitioner wishes to claim that [a state court ruling] denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." Duncan[v. Henry], 513 U.S. [364], 366, [115 S.Ct. 887, 887 (1995)]. And while his state court claims may have been related to the claims he presents in Grounds III and IV, they were not the federal claims he now raises and their mere similarity is insufficient to exhaust. Id.

For the first time in his petition for review to the Arizona Supreme Court, Petitioner cited to Milton v. Morris, 767 F.2d 1443, 1446–47 (9th Cir. 1985), for the proposition that due process is violated when the state unjustifiably hinders self-representation efforts by denying meaningful access to a telephone. (Exhibit GG.) Petitioner's mere mention of due process in the Arizona Supreme Court was insufficient to exhaust his claim in the state courts. See Casey v. Moore, 386 F.3d 896, 915–19 (9th Cir. 2004) (finding petitioner failed to fairly present federal claims when he raised them "for the first and only time to the state's highest court on discretionary review")
.

Answer at 15 & n.8.

**II Analysis**

**A. Exhaustion and procedural default**

Absent specific circumstances, the District Court may only grant federal habeas relief on the merits of a claim which has been "properly" exhausted in the state courts. See O'Sullivan v. Boerckel, 526 U.S. 838, 842, 119 S. Ct. 1728, 1731 (1999); Coleman v. Thompson, 501 U.S. 722, 729–30, 111 S. Ct. 2546, 2554–55 (1991). To properly exhaust a federal habeas claim, the petitioner must afford the state courts the opportunity to rule upon the merits of the claim by "fairly presenting" the claim to the state's "highest" court in a procedurally correct manner. See, e.g., Castille v. Peoples, 489 U.S. 346, 351, 109 S. Ct. 1056, 1060 (1989); Rose v. Palmateer, 395 F.3d 1108, 1110 (9th Cir. 2005).

The Ninth Circuit Court of Appeals has concluded that, in non-capital cases arising in Arizona, the "highest court" test of the exhaustion requirement is satisfied if the habeas petitioner presented his claim to the Arizona Court of Appeals, either in a direct appeal or in a petition for post-conviction relief. See Swoopes v. Sublett, 196 F.3d 1008, 1010 (9th Cir. 1999). See also Date v. Schriro, 619 F. Supp. 2d 736, 762-63 (D. Ariz. 2008); Crowell v. Knowles, 483 F. Supp. 2d 925, 932 (D. Ariz. 2007).

To satisfy the "fair presentment" prong of the exhaustion requirement, the petitioner must present "both the operative facts and the legal principles that control each claim to the state judiciary." Wilson v. Briley, 243 F.3d 325, 327 (7th Cir. 2001). See also Woods v. Sinclair, 764 F.3d 1109, 1129 (9th Cir. 2014). In Baldwin v. Reese, the Supreme Court reiterated that the purpose of exhaustion is to give the states the opportunity to pass upon and correct alleged constitutional errors. See 541 U.S. 27, 29, 124 S. Ct. 1347, 1349 (2004). Therefore, if the petitioner did not present the federal habeas claim to the state court as asserting the violation of a specific federal constitutional right, as opposed to violation of a state law or a state procedural rule, the federal habeas claim was not "fairly presented" to the state court. See, e.g., id., 541 U.S. at 33, 124 S. Ct. at 1351. See also Arrendondo v. Neven, 763 F.3d 1122, 1138 (9th Cir. 2014).

However,

> [The] AEDPA "leav[es] 'primary responsibility' for adjudicating federal claims to the States." Johnson v. Williams, —— U.S. ——, 133 S.Ct. 1088, 1097, 185 L.Ed.2d 105 (2013) (citing Woodford v. Visciotti, 537 U.S. 19, 27, 123 S.Ct. 357, [] (2002)). It follows that absent "evidence lead[ing] very clearly to the conclusion that a federal claim was inadvertently overlooked in state court," a federal habeas court presumes that the state court reached a petitioner's fairly presented federal claim. Id.

Williams v. Swarthout, 771 F.3d 501, 2014 WL 5368854, at *5 (9th Cir. 2014)

In order to fulfill exhaustion requirements, a petitioner must present to the state courts the "substantial equivalent" of the claim presented in federal court. Picard v. Connor, 404 U.S. 270, 278, 92 S. Ct. 509, 513–14 (1971); Dickens v. Ryan, 740 F.3d

1302, 1318-19 (9th Cir. 2014); Libberton v. Ryan, 583 F.3d 1147, 1164 (9th Cir. 2009). Full and fair presentation requires a petitioner to present the substance of his claim to the state courts, including a reference to a federal constitutional guarantee and a statement of facts that entitle the petitioner to relief.  See Arrendondo, 763 F.3d at 1138; Gulbrandson v. Ryan, 738 F.3d 976, 992 (9th Cir. 2013); Scott v. Schriro, 567 F.3d 573, 582 (9th Cir. 2009); Lopez v. Schriro, 491 F.3d 1029, 1040 (9th Cir. 2007).  Although a habeas petitioner need not recite "book and verse on the federal constitution" to fairly present a claim to the state courts, Picard, 404 U.S. at 277–78, 92 S. Ct. at 512–13, they must do more than present the facts necessary to support the federal claim.  See Anderson v. Harless, 459 U.S. 4, 6, 103 S. Ct. 276, 277 (1982).

A federal habeas petitioner has not exhausted a federal habeas claim if he still has the right to raise the claim "by any available procedure" in the state courts. 28 U.S.C. § 2254(c). Because the exhaustion requirement refers only to remedies still available to the petitioner at the time they file their action for federal habeas relief, it is satisfied if the petitioner is procedurally barred from pursuing their claim in the state courts.  See Woodford v. Ngo, 548 U.S. 81, 92–93, 126 S. Ct. 2378, 2387 (2006).  If it is clear the habeas petitioner's claim is procedurally barred pursuant to state law, the claim is exhausted by virtue of the petitioner's "procedural default" of the claim.  See, e.g., id., 548 U.S. at 92, 126 S. Ct. at 2387.

Procedural default occurs when a petitioner has never presented a federal habeas claim in state court and is now barred from doing so by the state's procedural rules, including rules regarding waiver and the preclusion of claims.  See Castille, 489 U.S. at 351–52, 109 S. Ct. at 1060.  Procedural default also occurs when a petitioner did present a claim to the state courts, but the state courts did not address the merits of the claim because the petitioner failed to follow a state procedural rule. See, e.g., Ylst v. Nunnemaker, 501 U.S. 797, 802, 111 S. Ct. 2590, 2594–95 (1991); Coleman v. Thompson, 501 U.S. 722, 727–28, 111 S. Ct. 2546, 2553–57(1991); Szabo v. Walls, 313 F.3d 392, 395 (7th Cir. 2002). "If a prisoner has defaulted a state claim by 'violating a state procedural rule which would constitute adequate and independent grounds to bar

direct review ... he may not raise the claim in federal habeas, absent a showing of cause and prejudice or actual innocence.'" Ellis v. Armenakis, 222 F.3d 627, 632 (9th Cir. 2000), quoting Wells v. Maass, 28 F.3d 1005, 1008 (9th Cir. 1994).

In Arizona, claims not previously presented to the state courts in either a direct appeal or on collateral review in an action for post-conviction relief pursuant to Rule 32, Arizona Rules of Criminal Procedure, are generally barred from federal review because an attempt to return to state court to present them is futile unless the claims fit in a narrow category of claims for which a successive Rule 32 action is permitted.  See Ariz. R. Crim. P. 32.1(d)–(h), 32.2(a) & (b) (successive petitions are limited to claims of being held in custody beyond sentence expiration, newly-discovered material facts, requests for delayed appeal, significant change in the law retroactively applicable that would probably overturn conviction or sentence, and actual innocence); Spreitz v. Ryan, 617 F. Supp. 2d 887, 899–900 (D. Ariz. 2009).

> For the procedural default rule to apply, "the application of the state procedural rule must provide an adequate and independent state law basis on which the state court can deny relief." Bennett v. Mueller, 322 F.3d 573, 580 (9th Cir. 2003) (amended) (internal quotation marks and citations omitted). Arizona's waiver rules are independent and adequate bases for denying relief. Stewart v. Smith, 536 U.S. 856, 859–60, 122 S.Ct. 2578, [] (2002) (per curiam) (holding denials pursuant to Arizona waiver rules are independent of federal law); Ortiz v. Stewart, 149 F.3d 923, 931–32 (9th Cir. 1998) (finding Arizona waiver rule consistently and regularly applied).

Hurles v. Ryan, 752 F.3d 768, 780 (9th Cir. 2014), cert. denied, 83 U.S.L.W. 3139 (Dec. 1, 2014).

To constitute an adequate and independent state procedural ground sufficient to support a state court's finding of procedural default, "a state rule must be clear, consistently applied, and well-established at the time of [the] petitioner's purported default." Lambright v. Stewart, 241 F.3d 1201, 1203 (9th Cir. 2001).  See also Murray v. Schriro, 745 F.3d 984, 1015-16 (9th Cir. 2014)  A state rule is considered consistently applied and well-established if the state courts follow it in the "vast majority of cases." Scott, 567 F.3d at 580, quoting Dugger v. Adams, 489 U.S. 401, 417 n.6, 109 S. Ct.

1211, 1221 n.6 (1989).  Additionally, for the proffered state procedural bar to preclude the consideration of a habeas claim "the state court must actually have relied on the procedural bar as an independent basis for its disposition of the case."  Caldwell v. Mississippi, 472 U.S. 320, 327, 105 S. Ct. 2633, 2638–39 (1985).  See also Harris v. Reed, 489 U.S. 255, 261–62, 109 S. Ct. 1038, 1042 (1989).

> "[A] procedural default does not bar consideration of a federal claim on either direct or habeas review unless the last state court rendering a judgment in the case clearly and expressly states that its judgment rests on a state procedural bar." Harris, 489 U.S. at 263, 109 S.Ct. 1038, [ ].... Sanders v. Cotton, 398 F.3d 572, 580 (7th Cir. 2005) (where the state appellate court's discussion of waiver is intertwined with its merits analysis, the state court's decision does not rest on an independent and adequate state law ground) ....

Pole v. Randolph, 570 F.3d 922, 937 (7th Cir. 2009) (some internal citations and quotations omitted).  See also Scott, 567 F.3d at 581–82.

Because the Arizona Rules of Criminal Procedure regarding timeliness, waiver, and the preclusion of claims, which have been found to be consistently applied and well-established, bar Petitioner from now returning to the state courts to exhaust any unexhausted federal habeas claims, Petitioner has exhausted, but procedurally defaulted, any claim not fairly presented to the Arizona Court of Appeals in his direct appeal or in his Rule 32 action.  See Hurles, 752 F.3d at 780; Insyxiengmay v. Morgan, 403 F.3d 657, 665 (9th Cir. 2005); Beaty v. Stewart, 303 F.3d 975, 987 (9th Cir. 2002).  See also Stewart v. Smith, 536 U.S. 856, 860, 122 S. Ct. 2578, 2581 (2002) (holding Arizona's state rules regarding the waiver and procedural default of claims raised in attacks on criminal convictions are adequate and independent state grounds for affirming a conviction and denying federal habeas relief on the grounds of a procedural bar.

### B. Cause and prejudice

The Court may consider the merits of a procedurally defaulted claim if the petitioner establishes cause for their procedural default and prejudice arising from that default. "Cause" is a legitimate excuse for the petitioner's procedural default of the claim and "prejudice" is actual harm resulting from the alleged constitutional violation.  See

Clabourne v. Ryan, 745 F.3d 362, 375 (9th Cir. 2014); Thomas v. Lewis, 945 F.2d 1119, 1123 (9th Cir. 1991). Under the "cause" prong of this test, Petitioner bears the burden of establishing that some objective factor external to the defense impeded his compliance with Arizona's procedural rules. See Moorman v. Schriro, 426 F.3d 1044, 1058 (9th Cir. 2005); Vickers v. Stewart, 144 F.3d 613, 617 (9th Cir. 1998); Martinez–Villareal v. Lewis, 80 F.3d 1301, 1305 (9th Cir. 1996). To establish prejudice, the petitioner must show that the alleged error "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." United States v. Frady, 456 U.S. 152, 170, 102 S. Ct. 1584, 1595 (1982). See also Correll v. Stewart, 137 F.3d 1404, 1415–16 (9th Cir. 1998). The Ninth Circuit Court of Appeals has also stated that prejudice is established by a petitioner's "actual innocence." See Vosgien v. Persson, 742 F.3d 1131, 1134-35 (9th Cir. 2014). Generally, a petitioner's lack of legal expertise is not cause to excuse procedural default. See, e.g., Hughes v. Idaho State Bd. of Corr., 800 F.2d 905, 908 (9th Cir. 1986).

To establish prejudice, the petitioner must show that the alleged constitutional error worked to his actual and substantial disadvantage, infecting his criminal proceedings with constitutional violations. See Vickers, 144 F.3d at 617; Correll, 137 F.3d at 1415–16. Establishing prejudice requires a petitioner to prove that, "but for" the alleged constitutional violations, there is a reasonable probability he would not have been convicted of the same crimes. See Manning v. Foster, 224 F.3d 1129, 1135–36 (9th Cir. 2000); Ivy v. Caspari, 173 F.3d 1136, 1141 (8th Cir. 1999). Although both cause and prejudice must be shown to excuse a procedural default, the Court need not examine the existence of prejudice if the petitioner fails to establish cause. See Engle v. Isaac, 456 U.S. 107, 134 n.43, 102 S. Ct. 1558, 1575 n.43 (1982); Thomas, 945 F.2d at 1123 n.10.

A state criminal defendant does not have a federal constitutional right to the effective assistance of counsel during state post-conviction proceedings. See, e.g., Pennsylvania v. Finley, 481 U.S. 551, 555, 107 S. Ct. 1990, 1993 (1987); Graves v. McEwen, 731 F.3d 876, 878 (9th Cir. 2013). Accordingly, the general rule is that errors of counsel during a state post-conviction action cannot constitute "cause" to excuse the

procedural default of a federal habeas claim.  See, e.g., Coleman, 501 U.S. at 752, 111 S. Ct. at 2565; Clabourne, 745 F.3d at 374.  However, the Supreme Court's opinion in Martinez v. Ryan, 132 S. Ct. 1309 (2012), established a limited exception to this general rule, which exception applies only to Sixth Amendment ineffective assistance of counsel claims.  Martinez held that inadequate assistance of post conviction counsel or lack of counsel "at initial-review collateral review proceedings may establish cause for a prisoner's procedural default of a claim of ineffective assistance at trial." Id. at 1315.  In Ha Van Nguyen v. Curry, 736 F.3d 1287, 1293 (9th Cir. 2013), the Ninth Circuit expanded Martinez, holding that this doctrine can also apply to excuse the procedural default of claims asserting ineffective assistance of direct appeal counsel.

In Trevino v. Thaler, the Supreme Court delineated the Martinez analysis as consisting of four prongs:

> We consequently read Coleman as containing an exception, allowing a federal habeas court to find "cause," thereby excusing a defendant's procedural default, where (1) the claim of "ineffective assistance of trial counsel" was a "substantial" claim; (2) the "cause" consisted of there being "no counsel" or only "ineffective" counsel during the state collateral review proceeding; (3) the state collateral review proceeding was the "initial" review proceeding in respect to the "ineffective-assistance-of-trial-counsel claim"; and (4) state law requires that an "ineffective assistance of trial counsel [claim] ... be raised in an initial-review collateral proceeding."

133 S. Ct. 1911, 1918 (2013), citing Martinez, 132 S. Ct. at 1318–19, 1320–21 (alterations in original).

The first prong of this test requires a petitioner seeking to rely on Martinez to bring forward facts demonstrating that his underlying ineffective assistance of trial or appellate counsel claim is substantial. The Supreme Court has defined "substantial" as a claim that "has some merit." Martinez, 132 S. Ct. at 1318.  Stated inversely, a claim is "insubstantial" if "it does not have any merit or ... is wholly without factual support." Id. at 1319. Determining whether an ineffective assistance of counsel claim is substantial requires the Court to examine the claim under the standard stated in Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984). A petitioner asserting ineffective

assistance of counsel must show that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment," and that counsel's errors "deprive[d] the defendant of a fair trial, a trial whose result is reliable." Id., 466 U.S. at 687, 104 S. Ct. at 2064.  Additionally, not just any error or omission of counsel will be deemed "deficient performance" that will satisfy Martinez; if post-conviction counsel "in the initial-review collateral proceeding did not perform below constitutional standards," that attorney's performance does not constitute "cause." 132 S. Ct. at 1319.  Most notably, counsel "is not necessarily ineffective for failing to raise even a non-frivolous claim," much less a frivolous claim.  Sexton v. Cozner, 679 F.3d 1150, 1157 (9th Cir. 2012) (emphasis added).

### C. Fundamental miscarriage of justice

Review of the merits of a procedurally defaulted habeas claim is required if the petitioner demonstrates review of the merits of the claim is necessary to prevent a fundamental miscarriage of justice.  See Dretke v. Haley, 541 U.S. 386, 393, 124 S. Ct. 1847, 1852 (2004); Schlup v. Delo, 513 U.S. 298, 316, 115 S. Ct. 851, 861 (1995); Murray v. Carrier, 477 U.S. 478, 485–86, 106 S. Ct. 2639, 2649 (1986).  A fundamental miscarriage of justice occurs only when a constitutional violation has probably resulted in the conviction of one who is factually innocent. See Murray, 477 U.S. at 485–86, 106 S. Ct. at 2649; Thomas v. Goldsmith, 979 F.2d 746, 749 (9th Cir. 1992) (showing of factual innocence is necessary to trigger manifest injustice relief). To satisfy the "fundamental miscarriage of justice" standard, a petitioner must establish by clear and convincing evidence that no reasonable fact-finder could have found him guilty of the offenses charged.  See Dretke, 541 U.S. at 393, 124 S. Ct. at 1852; Wildman v. Johnson, 261 F.3d 832, 842–43 (9th Cir. 2001).

### D. Standard of review of exhausted claims

The Court may not grant a writ of habeas corpus to a state prisoner on a claim adjudicated on the merits in state court proceedings unless the state court reached a decision contrary to clearly established federal law or the state court decision was an unreasonable application of clearly established federal law.  See 28 U.S.C. § 2254(d);

Carey v. Musladin, 549 U.S. 70, 75, 127 S. Ct. 649, 653 (2006); Musladin v. Lamarque, 555 F.3d 834, 838 (9th Cir. 2009).  "Under AEDPA, a federal court may not grant a petition for a writ of habeas corpus unless the state court's adjudication on the merits was 'contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.'"  Lafler v. Cooper, 132 S. Ct. 1376, 1390 (2012), quoting 28 U.S.C. § 2254(d)(1).  The AEDPA requires that the habeas court review the "last reasoned decision" from the state court, "which means that when the final state court decision contains no reasoning, we may look to the last decision from the state court that provides a reasoned explanation of the issue." Murray v. Schriro  746 F.3d at 441, quoting Shackleford v. Hubbard, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000).

> A state court applies a clearly established standard unreasonably only if no "reasonable interpretation of the controlling [Supreme Court] standard" can "support [the state court's] legal ruling." Panetti v. Quarterman, 551 U.S. 930, 953, 127 S.Ct. 2842, [] (2007). So, when evaluating the reasonableness of a state court's application of a general standard, we must defer to any "principled reason for the state court to distinguish between the case before it and Supreme Court precedent." Murdoch v. Castro, 609 F.3d 983, 992 (9th Cir. 2010) (en banc). Moreover, § 2254(d)(1), the Supreme Court recently explained,
>
> > does not require state courts to extend [a Supreme Court] precedent or license federal courts to treat the failure to do so as error. Thus, "if a habeas court must extend a rationale before it can apply to the facts at hand," then by definition the rationale was not "clearly established at the time of the state-court decision." AEDPA's carefully constructed framework "would be undermined if habeas courts introduced rules not clearly established under the guise of extensions to existing law."
>
> White, 134 S.Ct. at 1706 (internal citations omitted) (quoting Yarborough, 541 U.S. at 666, 124 S.Ct. 2140).

Arrendondo, 763 F.3d at 1133-34.

> Recognizing the duty and ability of our state-court colleagues to adjudicate claims of constitutional wrong, AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court. AEDPA requires "a state prisoner [to] show that the state court's ruling on the claim being presented in federal court was so lacking

in justification that there was an error ... beyond any possibility for fairminded disagreement." Harrington v. Richter, [] 131 S.Ct. 770, 786–787, [] (2011). "If this standard is difficult to meet"—and it is—"that is because it was meant to be." Id., at ——, 131 S.Ct., at 786. We will not lightly conclude that a State's criminal justice system has experienced the "extreme malfunctio[n]" for which federal habeas relief is the remedy. Id., at ——, 131 S.Ct., at 786 (internal quotation marks omitted).

Burt v. Titlow, 134 S.Ct. 10, 15-16 (2013).

A state court decision is contrary to federal law if it applied a rule contradicting the governing law as stated in *United States Supreme Court opinions*, or if it confronts a set of facts that is materially indistinguishable from a decision of the Supreme Court but reaches a different result. See, e.g., Brown v. Payton, 544 U.S. 133, 141, 125 S. Ct. 1432, 1438 (2005); Yarborough v. Alvarado, 541 U.S. 652, 663, 124 S. Ct. 2140, 2149 (2004); Soto v. Ryan, 760 F.3d 947, 957 (9th Cir. 2014); Runningeagle v. Ryan, 686 F.3d 758, 785 (9th Cir. 2012), cert. denied, 133 S. Ct. 2766 (2013).

The "only definitive source of clearly established federal law under AEDPA is the holdings (as opposed to the dicta) of the Supreme Court as of the time of the state court decision." Clark v. Murphy, 331 F.3d 1062, 1069 (9th Cir. 2003), overruled on other grounds by Lockyer v. Andrade, 538 U.S. 63, 123 S.Ct. 1166, [] (2003). If Supreme Court "cases give no clear answer to the question presented, ... it cannot be said that the state court unreasonably applied clearly established Federal law." Wright v. Van Patten, 552 U.S. 120, 126, 128 S.Ct. 743, [] (2008) (internal quotation marks omitted). In other words, "'[i]t is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme Court].'" Richter, 131 S.Ct. at 786 (quoting Knowles v. Mirzayance, 556 U.S. 111, 122, 129 S.Ct. 1411, [] (2009)).

McKinney v. Ryan, 730 F.3d 903, 909 (9th Cir. 2013).

To satisfy the "unreasonable application" portion of the first prong, the petitioner must demonstrate that the state court's application of Supreme Court precedent to the facts of his case was not only incorrect but "objectively unreasonable." Woodford v. Visciotti, 537 U.S. 19, 123 S.Ct. 357, 360 (2002). "While Supreme Court precedent is the only authority that is controlling under AEDPA, we look to Ninth Circuit case law as 'persuasive authority for purposes of determining whether a particular state

court decision is an "unreasonable application" of Supreme Court law.'"
Luna v. Cambra, 306 F.3d 954, 960 (9th Cir. 2002) (quoting Van Tran v.
Lindsey, 212 F.3d 1143, 1154 (9th Cir. 2000)...[]

Davis v. Woodford, 384 F.3d 628, 637-38 (9th Cir. 2004).  See also Woods, 764 F.3d at 1121.

A state court decision involves an unreasonable application of clearly established federal law if it correctly identifies a governing rule but applies it to a new set of facts in a way that is objectively unreasonable, or if it extends, or fails to extend, a clearly established legal principle to a new set of facts in a way that is objectively unreasonable. See McNeal v. Adams, 623 F.3d 1283, 1287–88 (9th Cir. 2010). The state court's determination of a habeas claim may be set aside under the unreasonable application prong if, under clearly established federal law, the state court was "unreasonable in refusing to extend [a] governing legal principle to a context in which the principle should have controlled." Ramdass v. Angelone, 530 U.S. 156, 166, 120 S. Ct. 2113, 2120 (2000).  See also Cheney v. Washington, 614 F.3d 987, 994 (9th Cir. 2010).  However, the state court's decision is an unreasonable application of clearly established federal law only if it can be considered objectively unreasonable.  See, e.g., Renico v. Lett, 559 U.S. 766, 130 S. Ct. 1855, 1862 (2010); Runningeagle, 686 F.3d at 785.  An unreasonable application of law is different from an incorrect one.  See Renico, 130 S. Ct. at 1862; Cooks v. Newland, 395 F.3d 1077, 1080 (9th Cir. 2005).  "That test is an objective one and does not permit a court to grant relief simply because the state court might have incorrectly applied federal law to the facts of a certain case."  Adamson v. Cathel, 633 F.3d 248, 255–56 (3d Cir. 2011).  See also Howard v. Clark, 608 F.3d 563, 567–68 (9th Cir. 2010).

Pursuant to section 2254(d)(2), the "unreasonable determination" clause, "a state-court's factual determination is not unreasonable merely because the federal habeas court would have reached a different conclusion in the first instance." Burt, 134 S.Ct. at 15 (internal quotation marks and citation omitted), quoted by Clark v. Arnold, 769 F.3d 711, 724-25 (9th Cir. 2014).  Factual findings of a state court are presumed to be correct and

can be reversed by a federal habeas court only when the federal court is presented with clear and convincing evidence.  See 28 U.S.C. § 2254(e)(1); Miller–El v. Dretke, 545 U.S. 231, 240–41, 125 S. Ct. 2317, 2325 (2005); Miller–El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041 (2003); Runningeagle, 686 F.3d at 763 n.1; Crittenden v. Ayers, 624 F.3d 943, 950 (9th Cir. 2010); Stenson, 504 F.3d at 881; Anderson v. Terhune, 467 F.3d 1208, 1212 (9th Cir. 2006). The "presumption of correctness is equally applicable when a state appellate court, as opposed to a state trial court, makes the finding of fact." Sumner v. Mata, 455 U.S. 591, 593, 102 S. Ct. 1303, 1304–05 (1982).  Additionally, the United States Supreme Court has held that, with regard to claims adjudicated on the merits in the state courts, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." Cullen v. Pinholster, 131 S. Ct. 1388, 1398 (2011).  See also Murray v. Schriro, 745 F.3d at 998.

If the Court determines that the state court's decision was an objectively unreasonable application of clearly established United States Supreme Court precedent, the Court must review whether Petitioner's constitutional rights were violated, i.e., the state's ultimate denial of relief, without the deference to the state court's decision that the Anti–Terrorism and Effective Death Penalty Act ("AEDPA") otherwise requires.  See Lafler, 132 S. Ct. 1389-90; Panetti v. Quarterman, 551 U.S. 930, 953–54, 127 S. Ct. 2842, 2858–59 (2007);  Amado v. Gonzalez, 758 F.3d 1119, 1131 (9th Cir. 2014); Runningeagle, 686 F.3d at 785-86; Greenway v. Schriro, 653 F.3d 790, 805–06 (9th Cir. 2011); Frantz v. Hazey, 533 F.3d 724, 735 (9th Cir. 2008).

**E. Petitioner's claims for relief**

**1.  Petitioner asserts his right to due process and his right to equal protection were violated because he did not receive a proper arraignment.**

Petitioner asserts his right to due process and equal protection were violated because, rather than being arraigned in Superior Court, Petitioner appeared before a Commissioner.  Petitioner alleges the Commissioner entered a not guilty plea on behalf

of Petitioner without informing Petitioner of the charges against him, and that he was not represented by counsel at these "12.10" hearings.  Petitioner alleges that the "12.10" hearings he received "lacks[] the constitutional safeguards required by the United States and Arizona constitutions".

Petitioner raised this claim in his direct appeal.  The state appellate court found Petitioner was properly arraigned.  The Court of Appeals found, as a matter of fact, that Petitioner was represented by counsel at the hearings.  The Arizona Court of Appeals further found that the indictments included descriptions sufficient to inform Petitioner of the offenses charged.

Respondents argue:

"Due process of law, [the United States Supreme Court] has held, does not require the state to adopt any particular form of procedure, so long as it appears that the accused has had sufficient notice of the accusation and an adequate opportunity to defend himself in the prosecution. Garland v. Washington, 232 U.S. 642, 645 (1914) (citing Rogers v. Peck, 199 U.S. 425, 435 (1905)).
***
Here, Petitioner was arraigned on both cause numbers. (Exhibits C & E.) In each instance, the minute entry denotes that Petitioner appeared before Commissioner Brian S. Rees, was represented by counsel, and "enter[ed] a plea of not guilty to all charges." (Id.) The minute entries thus demonstrate that Petitioner was made aware of the charges against him and chose to proceed to trial at a proceeding consistent with both federal due process and Arizona Rule 14.

Petitioner, however, contends that he was "unlawfully brought before a T.V. where Commissioner Reese appeared" and Commissioner Reese "entered a plea of not guilty for him." (Docket # 15, at 6.) Petitioner ignores the language of Rules 14.2 and 14.3. Rule 14.2 provides that "[t]he defendant shall be arraigned personally before the trial court or by video telephone." Ariz. R. Crim. P. 14.2 (emphasis added). The rules thus specifically provide for appearance by video telephone. Moreover, Rule 14.3 provides that "[u]nless the defendant pleads guilty or no contest, the court shall enter a plea of not guilty." Ariz. R. Crim. P. 14.3(a) (emphasis added). Petitioner does not suggest that he intended to plead guilty or no contest, or that he attempted to do so at the arraignment. The trial court accordingly entered a not guilty plea when Petitioner failed to do otherwise, without possible prejudice to Petitioner.

Answer at 19-20.

The state court's conclusion that the arraignments did not violate Petitioner's right to due process of law was neither contrary to, nor an unreasonable application of clearly established federal law, nor based on an unreasonable determination of the facts.

Petitioner contends that he has wrongfully been denied transcripts of his arraignment hearings which, he alleges, would establish that he was denied counsel and notice of the charges against him.  However, the state court's findings of fact--that Petitioner was afforded counsel and notice of the charges at the hearings--are not belied by the unavailability of the transcripts.

> Woods contends the state supreme court wrongfully denied him an evidentiary hearing to develop this claim. We construe his argument as a claim that that the state court's factfinding process was flawed and was therefore an unreasonable determination of the facts under 28 U.S.C. § 2254(d)(2). A state court's fact-finding process is unreasonable under § 2254(d)(2) only when we are "satisfied that any appellate court to whom the defect is pointed out would be unreasonable in holding that the state court's factfinding process was adequate." Taylor v. Maddox, 366 F.3d 992, 1000 (9th Cir. 2004).

Woods v. Sinclair, 764 F.3d 1109, 1128 (9th Cir. 2014).

When determining if a state court's decision was an "unreasonable application" of the facts to the established federal law, the state court decision decision under review must be found to be more than "incorrect or erroneous" for a petitioner to be entitled to a writ of habeas corpus.  Lockyer v. Andrade, 538 U.S. 63, 75, 123 S.Ct. 1166, 1174-75 (2003).  The same standard of objective unreasonableness is applied to a state court's factual determinations under 28 U.S.C. § 2254(d)(2).  See Soto v. Ryan, 760 F.3d 947, 957 (9th Cir. 2014); Murray v. Schriro, 745 F.3d at 999.  Because the state court's factual determination that Petitioner was informed of the charges against him and represented by counsel at the arraignments is supported by the record, and the facts as reasonably found by the Arizona Court of Appeals controvert Petitioner's claim that he was not represented by counsel and that he was not informed of the charges against him, the state court's decision that Petitioner was not deprived of his right to due process is not clearly contrary

to nor an unreasonable application of federal law.

Because the Arizona state courts' conclusion that Petitioner's arraignment did not violate his constitutional rights was not clearly contrary to nor an unreasonable application of federal law, Petitioner is not entitled to habeas relief based on this claim.

**2. Petitioner contends his right to due process of law was violated because the indictments did not sufficiently notify Petitioner of the charges against him.**

Petitioner exhausted this claim by presenting it to the Arizona Court of Appeals in his direct appeal.  The appellate court concluded that Petitioner had failed to specifically explain how any of the charges stated in the indictment were deficient, and also found that the indictments included descriptions which sufficiently informed Petitioner of the charged offenses.

Respondents argue:

> Due process requires that a defendant be given "'notice of the specific charge, and a chance to be heard in a trial of the issues raised by that charge.'" State v. Blakley, 65 P.3d 77, 87, ¶ 47 (Ariz. 2003), quoting Cole v. Arkansas, 333 U.S. 196, 201 (1948). "Beyond notice, a claimed deficiency in a state criminal indictment is not cognizable on federal collateral review." Roe v. Baker, 316 F.3d 557, 570 (6th Cir. 2002). See also Knewel v. Egan, 268 U.S. 442, 446 (1925) ("It has been uniformly held by this court that the sufficiency of an indictment cannot be reviewed in habeas corpus proceedings."); Sallahdin v. Gibson, 275 F.3d 1211, 1227 (10th Cir. 2002) ("A challenge to the adequacy of the Information under Oklahoma law, however, is a question of state law, which this court has no power to address.")
> ***
> To the extent that Petitioner argues that alleged defects in the indictment somehow divested the Maricopa County Superior Court of subject matter to try him on the charged felonies, that claim does not warrant habeas relief because such an outcome would contradict overwhelming federal and state precedent holding that "defects in an indictment do not deprive a court of its power to adjudicate a case." United States v. Cotton, 535 U.S. 625, 630 (2002). Accord United States v. Williams, 341 U.S. 58, 66 (1951) (holding that a ruling "that the indictment is defective does not affect the jurisdiction of the trial court to determine the case presented by the indictment"); Lamar v. United States, 240 U.S. 60, 65 (1916) (noting that "[t]he objection that the indictment does not charge a crime against the United States goes only to the merits of the case," rather than the court's jurisdiction); United States

v. Arnt, 474 F.3d 1159, 1162 (9th Cir. 2007) (rejecting contention that the indictment's "failure to assert residence stripped the district court of jurisdiction to hear the case," because "defects in an indictment do not deprive a court of its power to adjudicate a case.") (quoting Cotton, 535 U.S. at 630); Delgado-Garcia, 374 F.3d at 1342 ("Precedent bolsters our conclusion that the substantive sufficiency of the indictment is a question that goes to the merits of the case, rather than the district court's subject-matter jurisdiction."); State v. Ortiz, 34 A.3d 599, 603 (N.H. 2011).

Answer at 21-22 & n.12.

> The indictments in this case were sufficient under Arizona law, and provided due process. For example, Count 1 in the indictment for CR 2010–158088 read, "[Petitioner], on or about the 25th day of September, 2010, knowingly possessed or used Methamphetamine, a dangerous drug, in violation of A.R.S. §§ 13-3401, 13-3401, 13-3418, 13-701, 13-702, and 13-801." (Exhibit B.) The remaining counts in CR 2010–158088 and the two counts in CR 2010–007952 similarly set forth the approximate date of the offense, the elements of possession—that Petitioner "knowingly possessed or used" illegal drugs and paraphernalia, and the applicable statutes. (Exhibits B & D.) This is all that is required under the Arizona Rules of Criminal Procedure.

Id. at 24.

"The Sixth Amendment guarantees a criminal defendant the fundamental right to be informed of the nature and cause of the charges made against him so as to permit adequate preparation of a defense." Gautt v. Lewis, 489 F.3d 993, 1002 (9th Cir. 2007).

> We therefore conclude that, for purposes of AEDPA's "clearly established Federal law" requirement, it is "clearly established" that a criminal defendant has a right, guaranteed by the Sixth Amendment and applied against the states through the Fourteenth Amendment, to be informed of any charges against him, and that a charging document, such as an information, is the means by which such notice is provided. To satisfy this constitutional guarantee, the charging document need not contain a citation to the specific statute at issue; the substance of the information, however, must in some appreciable way apprise the defendant of the charges against him so that he may prepare a defense accordingly.

Id. at 1004.

> The sixth amendment guarantees a criminal defendant a fundamental right to be clearly informed of the nature and the cause of the accusation against

him. To determine whether a defendant has received fair notice of the charges against him, we look first to the indictment. The principal purpose of an indictment is to provide the defendant with a description of the charges against him in sufficient detail to enable him to prepare his defense and plead double jeopardy in a later prosecution. However, an indictment is not constitutionally defective if it states the elements of an offense charged with sufficient clarity to apprise a defendant of what to defend against.

Nevius v. Sumner, 852 F.2d 463, 471 (9th Cir. 1988) (internal citations and quotations omitted).

The state court's conclusion that the indictments were not constitutionally defective was not clearly contrary to nor an unreasonable application of federal law. Compare Sheppard v. Rees, 909 F.2d 1234, 1235-37 (9th Cir. 1989) (holding there was insufficient notice where felony murder was never raised in pleading, pretrial proceedings or at trial, but only in jury instructions); Givens v. Housewright, 786 F.2d 1378, 1380-81 (9th Cir. 1986) (holding an information charging murder "by striking [victim] about the head and body with his fists" insufficient to charge murder by torture); Kreck v. Spalding, 721 F.2d 1229, 1232-33 (9th Cir. 1983) (holding an indictment was insufficient where it failed to specify what crime was the predicate for a charge of felony murder).

Because the state court's decision that the indictments were not defective was not clearly contrary to nor an unreasonably application of federal law, Petitioner is not entitled to habeas relief on the merits of this claim.

**3.   Petitioner contends his right to due process and fair trial rights were violated because, as a self-representing defendant, he was unable to place telephone calls to witnesses or an investigator before trial.**

Respondents assert Petitioner did not properly exhaust this claim in the state courts by fairly presenting it as a claim that his federal constitutional rights were violated.

In his pro se brief in his direct appeal to the Arizona Court of Appeals Petitioner did not place "*ALERT TO FEDERAL CLAIM*" in this section of his brief, as he did in other sections of his brief.  However, in his pleadings appealing the Court of Appeals' decision to the Arizona Supreme Court, Petitioner added a citation and quotation from

1    <u>Milton v. Morris</u>, 767 F.2d 1443 (9th Cir. 1985) when discussing this claim for relief.

2         Respondent argues:

3         Petitioner did not raise and exhaust his Ground III and IV claims as federal
          claims in the state court. In his direct appeal and corresponding petition for
4         review, Petitioner argued that he was forced to go to trial without adequate
          time to prepare and that his defense was hindered by the county jail's
5         policy of not allowing inmates to call witnesses or investigators directly.
          (Exhibits AA & GG.) In each instance, Petitioner failed to cite any
6         authority. (Id.) He did not assert, as he does now, that his federal
          constitutional due process and fair trial rights were violated. (Id.; see also
7         Docket #1.) "If a habeas petitioner wishes to claim that [a state court ruling]
          denied  him  the  due  process  of  law  guaranteed  by  the  Fourteenth
8         Amendment, he must say so, not only in federal court, but in state court."
          <u>Duncan</u>, 513 U.S. at 366. And while his state court claims may have been
9         related to the claims he presents in Grounds III and IV, they were not the
          federal claims he now raises and their mere similarity is insufficient to
10        exhaust. <u>Id.</u>

11   Answer at 15.

12        Petitioner did not "fairly present" this claim to the Arizona Court of Appeals as a

13   federal constitutional claim.  Petitioner did not cite to <u>any</u> specific federal constitutional

14   right or any federal legal opinion in his brief to the Arizona Court of Appeals.  In his

15   brief seeking review of the Court of Appeals' decision by the state Supreme Court

16   Petitioner did cite a single federal case in his brief.   Respondent contends: "Petitioner's

17   mere mention of due process in the Arizona Supreme Court was insufficient to exhaust

18   his claim in the state courts." Answer at 15 n.8, <u>citing</u> <u>Casey v. Moore</u>, 386 F.3d 896,

19   915–19 (9th Cir. 2004) (holding the petitioner failed to fairly present their federal claims

20   when they raised them "for the first and only time to the state's highest court on

21   discretionary review").

22        In response to Respondents' assertion that he did not properly exhaust some his

23   claims in the state courts as federal constitutional claims, Petitioner argues he "asserted

24   his claims in terms so particular as to call to mind a specific right protected by the

25   constitution or alleged a pattern of facts well within the mainstream of constitutional

26   litigation." Doc. 43 at 2.  Petitioner asserts Respondents mis-state the facts by averring he

did not cite federal law until his direct appeal brief in the state Supreme Court and, accordingly, he contends he did exhaust his third claim for relief.  Petitioner further asserts he repeatedly "exhausted" this claim by repeatedly raising the facts and legal basis for the claim in the state courts.

Petitioner did not properly exhaust this claim in the state courts as a federal constitutional claim because he did not provide both the factual basis and the operative legal theory on which he sought relief to the state courts.   "Mere general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, do not establish exhaustion." Castillo, 399 F.3d at 999 (quotations omitted).  General and conclusory references to "due process" do not suffice to exhaust a claim that the petitioner's Fourteenth Amendment rights were violated.  See Reynoso v. Giurbino, 462 F.3d 1099, 1109 (9th Cir. 2006); Castillo, 399 F.3d at 1000–02 (concluding it is not sufficient to engage in "scattershot citation of federal constitutional provisions" without developing "any articulated federal legal theory ..."); Galvan v. Alaska Dep't of Corr., 397 F.3d 1198, 1204 (9th Cir. 2005) ("Briefing a case is not like writing a poem, where the message may be conveyed entirely through allusions and connotations....").   The exhaustion requirement is not "satisfied by the mere circumstance that the 'due process ramifications' of an argument might be 'self-evident.'" Gatlin v.. Madding, 189 F.3d 882, 888 (9th Cir.1999).    See also Fields v. Waddington, 401 F.3d 1018, 1021 (9th Cir. 2005).[3]  Compare McKinney v. Ryan  730 F.3d 903, 911-12 (9th Cir. 2013); Robinson v.

---

[3]

Petitioner's briefing to the state court mentioned the "federal Constitution" twice, and "due process" once, but discussed an applicable provision of the state constitution throughout the remainder of the argument. Petitioner's mere mention of the federal Constitution as a whole, without specifying an applicable provision, or an underlying federal legal theory, does not suffice to exhaust the federal claim. See Castillo v. McFadden, 399 F.3d 993, 1002 (9th Cir. 2005) (holding that exhaustion demands more than a citation to a general constitutional provision, detached from any articulation of the underlying federal legal theory). Nor is a federal claim exhausted by a petitioner's mention, in passing, of a broad constitutional concept, such as due process.   See Hiivala, 195 F.3d at 1106 (holding that "general appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish

1    Schriro, 595 F.3d 1086, 1103 (9th Cir. 2010).

2          Additionally, Petitioner's citation to Milton in his brief to the Arizona Supreme

3    Court does not constitute proper presentment of a claim that his federal constitutional

4    right to due process was violated because his access to a telephone to contact witnesses

5    and an investigator was hampered, because the citation to Milton appeared in his petition

6    for review to the Arizona Supreme Court rather than in his brief to the Arizona Court of

7    Appeals (although it was cited in his motion for reconsideration) and because Milton

8    does not establish the proposition of federal constitutional law for which Petitioner cited

9    this case.

10               Had Arrendondo included Nobles in his briefs, it might have satisfied the
              fair-presentation requirement. That requirement may be satisfied "by citing
11            ... a case deciding [a sufficiently similar] claim on federal grounds."
              Baldwin v. Reese, 541 U.S. 27, 32, 124 S.Ct. 1347, 158 L.Ed.2d 64 (2004).
12            But the Nobles citation appeared in a collateral pro se motion, not in the
              merits brief filed by counsel. "As a general rule, a petitioner satisfies the
13            exhaustion requirement by fairly presenting the federal claim to the
              appropriate state courts (plural) in the manner required by the state courts."
14            Casey, 386 F.3d at 915–16. That usually means "present[ing] his federal,
              constitutional issue before the ... [state courts] within the four corners of his
15            appellate briefing." Castillo, 399 F.3d at 1000. A pro se procedural motion
              unrelated to the substantive merits of Arrendondo's claim briefed by
16            counsel is not part of the "appellate briefing" for purposes of the Castillo
17            "four corners" requirement.
18
19   Arrendondo v. Neven  763 F.3d 1122, 1139 (9th Cir. 2014).  See also Gulbrandson v.

20   Ryan, 738 F.3d 976, 992 (9th Cir. 2013).

21         The claim may be denied on the merits regardless of Petitioner's procedural

22   default of the claim.  In his brief to the Arizona Supreme Court Petitioner cited Milton for

23   the proposition that, presumably pursuant to Faretta v. California, 422 U.S. 806, 95 S.Ct.

24   2525 (1975), a pro se defendant has a federal constitutional right to have access to "law

25   books ... [and] other tools to prepare a defense".  Milton, 767 F.2d at 1446.  However, the

26   Supreme Court expressly rejected this interpretation of Faretta in Kane v. Garcia Espitia,

27   546 U.S. 9, 126 S.Ct. 407 (2005).  In Kane the Supreme Court explicitly stated that "it is

28
     ───────────────────────────────
          exhaustion" (emphasis added)).

clear that <u>Faretta</u> does not...'clearly establis[h]' the law library access right," and "[i]n fact, <u>*Faretta*</u> *says nothing about any specific legal aid that* the State owes a pro se criminal defendant." <u>Id.</u> 546 U.S. at 10 (emphasis added) (holding that the denial of access to a law library cannot provide the basis for federal habeas corpus relief because there is no Supreme Court authority establishing a pro se petitioner's constitutional right to law library access).

Whether the right of self-representation or due process includes library access is an unsettled question of federal law. <u>See</u> <u>Kane</u>, 126 S.Ct. at 408. Derivatively, there is no established federal law as to the parameters of self-representation, such as unfettered use of a telephone to contact witnesses or an investigator. Because Petitioner was not deprived of a federal constitutional right, Petitioner is not entitled to habeas relief on the merits of the claim.

**4. Petitioner asserts his right to due process and a fair trial were violated because, after he refused to waive his right to a speedy trial, the trial judge set trial to begin two hours after a status conference.**

In his direct appeal Petitioner asserted that he was forced to chose between his "speedy trial rights" and going to trial before he was prepared to do so. Petitioner asserted this claim in his direct appeal, without citation to any federal constitutional law or published opinion by a federal court. The state appellate court summarily found that Petitioner had twice been offered a continuance and refused these offers.

Petitioner asserts that, on July 26, 2011, his "last day" with regard to all of the pending charges, the case was set for a status conference before Judge McMurdie. At that time Petitioner, *inter alia*, submitted a motion to dismiss, asserting that because he had not been tried within the time specified by Rule 8, Arizona Rules of Criminal Procedure, all of charges against him in all of his pending cases must be dismissed. Petitioner alleged that the trial court told him he could "either go to trial today or waive time." Petitioner asserts that he chose to go to trial and that he was prejudiced thereby. At that trial Petitioner cross-examined witnesses, challenged evidence, and testified in his own behalf. Petitioner did not aver that anyone who might be subpoenaed as a witness

on his behalf was not subpoenaed because he was unprepared to try his case.

Respondent argues:

> Petitioner did not raise and exhaust his Ground ... IV claims as federal claims in the state court. In his direct appeal and corresponding petition for review, Petitioner argued that he was forced to go to trial without adequate time to prepare and that his defense was hindered by the county jail's policy of not allowing inmates to call witnesses or investigators directly. (Exhibits AA & GG.) In each instance, Petitioner failed to cite any authority. (Id.) He did not assert, as he does now, that his federal constitutional due process and fair trial rights were violated. (Id.; see also Docket #1.) "If a habeas petitioner wishes to claim that [a state court ruling] denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal court, but in state court." Duncan, 513 U.S. at 366. And while his state court claims may have been related to the claims he presents in Grounds ... IV, they were not the federal claims he now raises and their mere similarity is insufficient to exhaust. Id.

Answer at 15.

Petitioner did not properly exhaust his fourth habeas claim as a federal constitutional claim by fairly presenting it to the Arizona courts as asserting the violation of his federal constitutional right to due process of law or a fair trial.   Presenting the claim to the state courts as a violation of Petitioner's rights pursuant to Arizona's laws and rules of procedure was not sufficient to exhaust a Sixth Amendment claim.  "Though the rule and the Sixth Amendment both contain the right to a "speedy trial," they mean different things. The constitutional rule imposes a flexible limit that is far longer than the Arizona rule in most or all cases."   Stuard v. Stewart, 401 F.3d 1064, 1068 (9th Cir. 2005).

Petitioner has not established cause nor prejudice with regard to his procedural default of the claim, or that a fundamental miscarriage of justice will occur absent consideration of the merits of the claim.

Petitioner further seeks to amend his petition to state a claim that his right to a speedy trial was violated by the trial court's denial of his motion to dismiss all of the charges against him based on a violation of Rule 8, Arizona Rules of Criminal

Procedure.[4]  At the beginning of the first trial the trial court denied the motion, finding Petitioner was tried within the time required by the rule and that, with regard to the subsequent trials, the time spent in the first trial was excluded.   Absent a failure to exhaust a claim based on Petitioner's federal constitutional right to a speedy trial, as compared to Petiitioner's "right" based on Rule 8, Arizona Rules of Criminal Procedure, such a claim could be denied on the merits.

The Sixth Amendment's provision of a "right to a speedy and public trial ..." applies to state court proceedings pursuant to the Fourteenth Amendment. See Klopfer v. North Carolina, 386 U.S. 213, 222–23, 87 S.Ct. 988, 993 (1967). The Sixth Amendment guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right to a

---

[4] Rule 8.2, Arizona Rules of Criminal Procedure, provides:

a. General. Subject to the provisions of Rule 8.4, every person against whom an indictment, information or complaint is filed shall be tried by the court having jurisdiction of the offense within the following time periods:

(1) Defendants in Custody. 150 days from arraignment if the person is held in custody, except as provided in subsection (a), paragraph (3) of this section.

(2) Defendants Released From Custody. 180 days from arraignment if the person is released under Rule 7, except as provided in subsection (a), paragraph (3) of this section.

Rule 8.4, Arizona Rules of Criminal Procedure, provides:

The following periods shall be excluded from the computation of the time limits set forth in Rules 8.2 and 8.3:

a. Delays occasioned by or on behalf of the defendant, including, but not limited to, delays caused by an examination and hearing to determine competency or intellectual disability, the defendant's absence or incompetence, or his or her inability to be arrested or taken into custody in Arizona.

b. Delays resulting from a remand for new probable cause determination under Rules 5.5 or 12.9.

c. Delays resulting from extension of the time for disclosure under Rule 15.6.

d. Delays necessitated by congestion of the trial calendar, but only when the congestion is attributable to extraordinary circumstances, in which case the presiding judge shall promptly apply to the Chief Justice of the Arizona Supreme Court for suspension of any of the Rules of Criminal Procedure.

e. Delays resulting from continuances in accordance with Rule 8.5, but only for the time periods prescribed therein.

f. Delays resulting from joinder for trial with another defendant as to whom the time limits have not run when there is good cause for denying severance. In all other cases, severance should be granted to preserve the applicable time limits.

g. Delays resulting from the setting of a transfer hearing pursuant to Rule 40 of these rules.

speedy ... trial." The speedy-trial right is "amorphous," "slippery," and "necessarily relative." Barker v. Wingo, 407 U.S. 514, 522, 92 S.Ct. 2182, 2188 (1972). In Barker, the Court refused to quantify the right or to predicate the right on a defendant's explicit request for a speedy trial. See Vermont v. Brillon, 556 U.S. 81, 89–90, 129 S.Ct. 1283, 1290 (2009).  Rejecting such "inflexible approaches," Barker established a "balancing test, in which the conduct of both the prosecution and the defendant are weighed." 407 U.S. at 529, 530, 92 S.Ct. at 2191–92. Some of the factors that should be weighed when considering such claims include the length of and reasons for delay, the defendant's assertion of his right, and the prejudice to the defendant of the delay. Brillon, 556 U.S. at 89–90, 129 S.Ct. at 1290; Barker, 407 U.S. at 530, 92 S.Ct. at 2192.

To trigger a speedy trial inquiry, an accused must show that the period between indictment and trial passes a threshold point of "presumptively prejudicial" delay. See, e.g., Barker, 407 U.S. at 530, 92 S.Ct. at 2192. Prejudice normally is presumed if the delay in bringing the defendant to trial has exceeded one year. Doggett v. United States, 505 U.S. 647, 652 n.1, 112 S.Ct. 2686, 2691 n.1 (1992). If this threshold is not met, the Court need not proceed with the other Barker factors. Id., 505 U.S. at 651–52, 112 S.Ct. at 2691; Barker, 407 U.S. at 530, 92 S.Ct. at 2192; United States v. Beamon, 992 F.2d 1009, 1012 (9th Cir. 1993). Deliberate delay "to hamper the defense" weighs heavily against the prosecution. Barker, 407 U.S. at 531, 92 S.Ct. at 2192. "[M]ore neutral reason[s] such as negligence or overcrowded courts" weigh less heavily "but nevertheless should be considered since the ultimate responsibility for such circumstances must rest with the government rather than with the defendant." Id.

The delay in Petitioner's criminal proceedings was not so lengthy or prejudicial as to implicate his federal constitutional rights. The delay in Petitioner's criminal proceedings from the time of indictment to the time of his trial was not longer than the one-year presumptively prejudicial delay and, because of the absence of evidence of prejudice, any delay did not violate his constitutional rights. See Stuard v. Stewart, 401 F.3d 1064, 1068 (9th Cir. 2005); Arnold v. McCarthy, 566 F.2d 1377, 1385–86 (9th Cir. 1978); Norris v. Schotten, 146 F.3d 314, 328 (6th Cir. 1998). Compare McNeely v.

Blanas, 336 F.3d 822, 829 (9th Cir. 2003).

**5. Petitioner asserts his right to due process, to a fair trial, and to equal protection were violated when he was denied arraignment transcripts.**

Petitioner claims that he has repeatedly requested the video and audio recordings of the not guilty arraignments and that the state courts have failed to produce these recordings or transcripts of the hearings. Petitioner contends that the recordings would "prove his claim" that these proceedings were constitutionally deficient. Petitioner asserted in his state court proceedings that he was wrongfully denied these transcripts and recordings. Petitioner asserted that depriving him of the recordings and transcripts violated his right to due process of law.

The state's court's denial of a petitioner's claim precludes habeas corpus relief unless that decision unreasonably applied or contravened federal law, or the decision was an unreasonable determination of the facts in light of the evidence presented. 28 U.S.C. § 2254(d)(1), (2). Federal courts must not "lightly conclude that a State's criminal justice system has experienced the 'extreme malfunction' for which federal habeas relief is the remedy." Burt, 134 S.Ct. at 16. See also Renico v. Lett, 559 U.S. 766, 773, 130 S.Ct. 1855, 176 L.Ed.2d 678 (2010) (Federal law "imposes a highly deferential standard for evaluating state-court rulings, and demands that state-court decisions be given the benefit of the doubt.").

Petitioner contends that he has wrongfully been denied transcripts of his arraignment hearings which, he alleges, would establish that he was denied counsel and notice of the charges against him. However, as noted supra, this allegation does not assert the violation of a federal constitutional right but, rather, a claim that the state's fact-finding process resulted in error prejudicial to Petitioner, i.e., that the state court's process in determining the sufficiency of Petitioner's arraignment or "12.10" hearing was unreasonable. See Woods, 764 F.3d at 1128 (9th Cir. 2014) ("A state court's fact-finding process is unreasonable under § 2254(d)(2) only when we are "'satisfied that any appellate court to whom the defect is pointed out would be unreasonable in holding that the state court's factfinding process was adequate.'", quoting Taylor v. Maddox, 366 F.3d

992, 1000 (9th Cir. 2004)).   The state court decision was based on reasonable interpretation of the record before the court, which record is not clearly incorrect or erroneous.  Because the state court's factual determination that Petitioner was informed of the charges against him and represented by counsel at the arraignments is supported by the record, and the facts as reasonably found by the Arizona Court of Appeals controvert Petitioner's claim that he was not represented by counsel and that he was not informed of the charges against him, the state court's decision that Petitioner was not deprived of his right to due process because he was not provided video or transcripts of the hearings was not clearly contrary to nor an unreasonable application of federal law.

**III Conclusion**

Petitioner did not properly exhaust his third and fourth claims for habeas relief in the state courts.  Petitioner has not established cause for, nor prejudice arising from his procedural default of these claims nor has Petitioner established that a fundamental miscarriage of justice will occur absent consideration of the claims.  The state courts considered and rejected Petitioner's first, second, and fifth claims for relief.  The state court's decision rejecting these claims was not clearly contrary to nor an unreasonable application of federal law.

**IT IS THEREFORE RECOMMENDED that** Mr. Ross' Petition for Writ of Habeas Corpus be denied and dismissed with prejudice.

This recommendation is not an order that is immediately appealable to the Ninth Circuit Court of Appeals. Any notice of appeal pursuant to Rule 4(a)(1), Federal Rules of Appellate Procedure, should not be filed until entry of the District Court's judgment.

Pursuant to Rule 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from the date of service of a copy of this recommendation within which to file specific written objections with the Court. Thereafter, the parties have fourteen (14) days within which to file a response to the objections. Pursuant to Rule 7.2, Local Rules of Civil Procedure for the United States District Court for the District of Arizona, objections to the Report and Recommendation may not exceed seventeen (17)

pages in length.

Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will be considered a waiver of a party's right to de novo appellate consideration of the issues.  See United States v. Reyna–Tapia, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc). Failure to timely file objections to any factual or legal determinations of the Magistrate Judge will constitute a waiver of a party's right to appellate review of the findings of fact and conclusions of law in an order or judgment entered pursuant to the recommendation of the Magistrate Judge.

Pursuant to 28 U.S.C. foll. § 2254, R. 11, the District Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." The undersigned recommends that, should the Report and Recommendation be adopted and, should Petitioner seek a certificate of appealability, a certificate of appealability should be denied because Petitioner has not made a substantial showing of the denial of a constitutional right.

Dated this 8th day of December, 2014.

_____
Mark E. Aspey
United States Magistrate Judge